**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE SCHORK GROUP, INC.,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 20-cv-6507** |
| | : | |
| **CHOICE!  ENERGY SERVICES,** | : | |
| **RETAIL, LP, <u>ET AL.</u>** | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

<u>**MEMORANDUM OPINION**</u>

**Goldberg, J.**                                                      **July 21, 2022**

In this copyright infringement action, Plaintiff The Schork Group, Inc. ("Plaintiff" or "TSGI") has sued Defendants Choice! Energy Services Retail, LP ("Choice") and Jason Scarbrough ("Scarbrough"), (collectively, "Defendants") for allegedly copying and distributing Plaintiff's proprietary information.  Over the course of several years, Defendants paid a subscription fee to access Plaintiff's daily newsletter analyzing energy cash and financial markets. Plaintiff alleges that despite the terms and conditions of the subscription specifically forbidding forwarding or copying of the content in the newsletters, Defendants copied Plaintiff's proprietary work product and distributed it on its website as its own work.

Before me is Defendants' motion to dismiss the Complaint in its entirety, or in the alternative, to transfer the case to the Southern District of Texas.  For the foregoing reasons, I find that this Court has jurisdiction over both Defendants and transfer of the case is not necessary. Additionally, I find that TSGI has successfully pled claims for copyright infringement, removal of copyright management information, and breach of contract, and thus, Defendants' motion will be

1

denied as to those claims.  However, I will grant Defendants' motion as to TSGI's claims for circumvention of copyright protection systems and unjust enrichment.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

The following facts and allegations are taken from the Complaint.  Plaintiff TSGI, a Pennsylvania corporation, provides price range forecasting and objective market analysis for the energy industry.  (Compl. ¶ 4, 12.)  In 2005, TSGI began publishing its flagship publication, the Schork Report, which provides "comprehensive technical and fundamental daily views of the energy cash and financial markets." (Id. ¶ 13, 14.)  The Schork Report is edited by Stephen Schork, who is an expert in the energy industry.  (Id. ¶ 16, 18.)  The Schork Report includes "commentary and analysis illustrating key supply/demand factors driving energy prices" as well as "proprietary charts and graphics that reflect TGSI's original expression of the underlying data."  (Id. ¶ 15, 20.)  TSGI distributes the Schork Report to paying subscribers who agree to its terms and conditions upon subscribing.  (Id. ¶ 22–23.) These terms and conditions reserve to TSGI all intellectual property rights in the Schork Report, and state:

> Content provided by The Schork Group, Inc. is protected by federal and international copyright laws and may not be forwarded or copied, even for internal use, without the prior written permission of The Schork Group, Inc. The Schork Group, Inc. is the owner of the Content and retains all associated proprietary rights. The Schork Group, Inc. hereby grants Authorized Users the limited right and license to use the Content provided. Each Authorized User must receive Content directly from TSGI. Each Authorized User may print out one copy of any Content for their individual use only. Sharing of the printed copy – or facsimiles thereof – is a direct violation of copyright law.

(Id. ¶ 24.)

---

[1]      In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

The terms and conditions go on to lay out specific requirements for quoting from or citing the Schork Report:

> Content may be quoted from or cited provided that (1) appropriate attribution, including The Schork Group, Inc.'s copyright notice (Copyright 20[XX] The Schork Group, Inc. / All rights reserved) is included; (2) any quotation or citation is reprinted in its entirety; and (3) a complete copy of the article, report, or other material in which the quotation or citation occurs is provided to The Schork Group, Inc. Under no circumstances is permission granted to paraphrase or quote out of context any language from the Content.

(Id. ¶ 25.)

The Schork Report is registered with the United States Copyright Office.  (Id. ¶ 28.)  In order to prevent unauthorized forwarding or copying of the reports, TSGI utilizes a digital rights management system that employs technical measures including encryption and watermarks. (Id. ¶ 30–31.)

Defendant Jason Scarbrough contacted TSGI in 2011 to discuss purchasing a subscription for the Schork Report.  (Id. ¶ 32.)  Scarbrough requested a "single seat license," meaning he would be the only person at Choice authorized to access the report.  (Id. ¶ 34–35.)   TSGI agreed to provide Choice with a single seat license to be used exclusively by Scarbrough.  (Id. ¶ 36.)  TSGI then began delivering daily password protected newsletters via email containing the Schork Report to Scarbrough only.  (Id. ¶ 37.)  These emails included a notice that:" (i) the newsletter is protected by federal and international copyright laws; (ii) TSGI retains all proprietary rights to the newsletter; (iii) all recipients must receive the newsletter directly from TSGI; and (iv) the newsletter may not be forwarded or copied without the prior written permission of TSGI."  (Id. ¶ 38.)  Invoices sent to Choice and Scarbrough reiterated the exclusivity of the single seat license issued to Scarbrough.  (Id. ¶ 39.)

Around 2020, TSGI realized that "Defendants Scarbrough and/or [Choice]" had allegedly circumvented their digital rights management system, copied material from the Schork Report,

and distributed it as their own. (Id. ¶ 40.) Specifically, on at least thirty-six occasions from 2015 through 2018, Defendants copied information from the Schork report such as proprietary graphs, removed the associated copyright information, and then inserted it into their own reports which were distributed on their website. (Id. ¶ 41.) In addition to copying several graphs, Defendants also copied the verbatim accompanying text with those graphs, with minimal edits. (Id. ¶ 45.) The publication and distribution of this content from the Schork Report was not authorized by TSGI, and Defendants did not provide attribution or citations from TSGI when republishing the content. (Id. ¶ 47–49.) Both Defendants Scarbrough and Choice were allegedly "knowing and actual participants" in the copying and republishing of the copyrighted content. (Id. ¶ 51, 54.) TSGI reminded Defendants in September of 2014 that their subscription was a single seat license and that sharing the report, even internally, was a violation of TSGI's copyright, to which Choice Managing Partner Kivanc Dikmen responded, "[w]e are well aware of it and your report does not get shared." (Id. ¶ 57.) Despite these assurances, Defendant Scarbrough allegedly admitted to TSGI that he had "probably [forwarded] 5-6 (to my best recollection) reports in the past few years to a single individual at a time." (Id. ¶ 58.)

TSGI filed their Complaint on December 28, 2020 asserting claims for copyright infringement (count one), circumvention of copyright protection systems (count two), removal or altercation of copyright management information (count three), breach of contract (count four), and unjust enrichment (count five). Defendants have moved to dismiss the Complaint in its entirety.

As a threshold matter, Defendants assert that this court does not have personal jurisdiction over Defendant Scarbrough because he is merely an employee of Choice and has no contacts with Pennsylvania. Therefore, Defendants argue that the case should be transferred to the Southern

District of Texas where Scarbrough resides and where all the allegedly wrongful actions taken by Choice occurred.  In the alternative, Defendants argue that the Complaint should be dismissed because TSGI fails to plead a cognizable claim against either Defendant.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may seek dismissal of a complaint for lack of personal jurisdiction.  "[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Cateret Sav. Bank, FA v. Shushan, 954 F.2d 141, 151 n.1 (3d Cir. 1992).  Plaintiff may do so through affidavits or jurisdiction competent evidence that show sufficient contacts with the forum state to establish personal jurisdiction.  De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, No. 08-0533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008).  Such contacts must be established with "reasonable particularity," but need only amount to a prima facie case in favor of personal jurisdiction.  Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)).  If the plaintiff meets this burden, the defendant must then establish the presence of other considerations that would render jurisdiction unreasonable.  De Lage Landen Fin. Servs., 2008 WL 4822033, at *3 (citing Carteret Sav. Bank v. Shushan, 954 F.2d at 150).  "When the parties do not request an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its

favor." <u>Devon MD LLC v. DeMaio</u>, No. 19-cv-5378, 2019 WL 7042426, at *6 (E.D. Pa. Dec. 19, 2019) (internal quotations omitted).

## III.   DISCUSSION

### A.   Personal Jurisdiction Over Defendant Scarbrough

Defendants first argue that the case against Defendant Scarbrough should be dismissed because this court does not have personal jurisdiction over him.   Scarbrough is a resident of the state of Texas.   Defendants assert that Scarbrough did not have any contacts with Pennsylvania nor did he direct any wrongful conduct here, and even if he did, he cannot be subjected to the personal jurisdiction of this court for Choice's alleged infringement activities because he is not a corporate officer who acted on behalf of Choice.   **TSGI responds that Scarbrough has sufficient contacts with Pennsylvania because he directed tortious acts at the Commonwealth of Pennsylvania, mainly, his communications with TSGI on behalf of Choice regarding his subscription to the Schork Report.   TSGI also maintains that Scarbrough was an officer of Choice and therefore can be held personally liable under the participation exception to the jurisdictional bar for individuals acting in their corporate capacity.**

Under Federal Rule of Civil Procedure 4(k)(1)(A), federal courts sitting in diversity can only exercise jurisdiction over a non-resident defendant to the extent permitted by the state's forum laws.   <u>See</u> <u>Martin v. Citizens Fin. Group, Inc.</u>, No. 10-cv-260, 2010 WL 3239187, at *3 (E.D. Pa. Aug. 13, 2010).   Here, the forum state is Pennsylvania, thus necessitating the application of Pennsylvania's long-arm statute.   Pursuant to this statute, personal jurisdiction of Pennsylvania courts over nonresident defendants is permitted "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b);

see Mellon Bank, 960 F.2d at 1221 ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment.").  Therefore, a court need only inquire whether the exercise of personal jurisdiction over the defendant would be constitutional under the Due Process Clause.  Id.  Pursuant to these constitutional considerations, physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).  Instead, personal jurisdiction may be based on either a defendant's general contacts ("general jurisdiction") or his specific contacts ("specific jurisdiction") with the forum.  Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).

Specific jurisdiction exists where the cause of action is related to or arises out of the defendant's contacts with the forum.  IMO Indus., 155 F.3d at 259 (citing Helicopteros de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984)).  For the exercise of specific jurisdiction to comply with the Due Process Clause, a plaintiff must satisfy a three-part test.  Louis A. Grant, Inc. v. Hurricane Equip., Inc., No. 07-cv-438, 2008 WL 892152, at *3 (W.D. Pa. Apr. 2, 2008).  First, the plaintiff needs to show that the defendant has "constitutionally sufficient 'minimum contacts' with the forum." IMO Indus., 155 F.3d at 259 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).  Second, the plaintiff's claim must "arise out of or relate to those activities." Helicopteros, 466 U.S. at 414.  Third, the reviewing court should consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); see also O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (enumerating the three elements of specific jurisdiction).  For a defendant's contacts with the forum to be constitutional, these contacts must be intentional, with the defendant purposefully availing

itself to the privilege of conducting business in the state. <u>See</u> <u>J. McIntyre Machinery, Ltd. V.</u> <u>Nicastro</u>, 564 U.S. 873, 880 (2011).  Purposeful availment ensures that defendants will not be haled into courts in states where their only contacts are "'random,' 'fortuitous,' or 'attenuated.'" <u>Burger King</u>, 471 U.S. at 475 (1985) (quoting <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 774 (1984)).

I address each prong of the traditional test for personal jurisdiction below.

### 1.      Scarbrough has sufficient contacts with Pennsylvania

I first find that Scarbrough has sufficient "minimum contacts" with Pennsylvania such that personal jurisdiction over him is proper.  As noted above, it is TSGI's burden to prove facts sufficient to establish personal jurisdiction, and they may do so through affidavits or other jurisdiction competent evidence.  TSGI attached several declarations to their opposition to the motion to dismiss from TSGI employees.  (<u>See</u> Pltf.'s Resp., Ex's. A-B.)   The first declaration from TSGI General Manager Dawn Winter details her communications with Scarbrough regarding his purchase of a subscription to the Schork Report.   (<u>Id.</u>, Ex. A.)   It additionally provides information regarding Scarbrough's position at Choice based on the titles he publicized in his email signatures and on his LinkedIn profile.  (<u>Id.</u>)  TSGI President Stephen Schork's declaration details his direct communications with Scarbrough over the six-year period he had a subscription to the report, during which Schork estimates Scarbrough contacted him at least once per week. (<u>Id.</u>, Ex. B.)  Attached to Schork's declaration is over fifty emails between he and Scarbrough in which Scarbrough routinely sought advice about trends in the energy markets.  (<u>Id.</u>, Attachment 1.)

As detailed in TSGI's Complaint and Winter's declaration, Scarbrough contacted TSGI, which is located in Pennsylvania, in 2011 to discuss purchasing a subscription for the Schork

Report.  (Compl. ¶ 32) (Winter Decl., Pltf.'s Resp., Ex. A., ¶ 11.)    Under <u>Burger King</u>, "prior negotiations and contemplated future circumstance. . . along with the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum." 471 U.S. at 479.  Here, Scarbrough communicated with TSGI directly to discuss the scope of the subscription, and ultimately chose to purchase a "single-seat" license giving him exclusive permission to access the report.  (Compl. ¶ 33–37) (Winter Decl., ¶ 14-16.)  Like in <u>Burger King</u>, Scarbrough "reached out beyond" his home state of Texas and "negotiated with a [Pennsylvania] corporation" to purchase the very subscription that is at the center of TSGI's claims. 471 U.S. at 479.    Furthermore, Scarbrough engaged in ongoing communications with TSGI over several years regarding additional content, allegedly contacting Stephen Schork once per week via email.  (Schork Decl., Pltf.'s Resp., Ex. B., ¶¶ 13-16.)  I do not find these contacts to be "random, fortuitous, or attenuated." <u>Burger King</u>, 471 U.S. at 475.  These numerous contacts were, rather, directed at TSGI headquarters located in Pennsylvania, and they are constitutionally sufficient for the exercise of personal jurisdiction over Scarbrough.  <u>See</u> <u>O'Connor</u>, 496 F.3d at 318 (finding that newsletters and communications sent to plaintiffs in Pennsylvania constituted sufficient minimum contacts to subject an out-of-state defendant to personal jurisdiction in Pennsylvania).

Defendants assert that Scarbrough and Choice cannot be "lumped together" for purposes of this contacts analysis, and that any alleged agreement with TSGI was between Choice and TSGI only.  Therefore, Defendants maintain that Scarbrough does not *personally* have sufficient contacts with Pennsylvania outside of his contacts with Pennsylvania through Choice.  However, this argument is belied by the allegations in the Complaint as well as the declarations and supporting attachments to Plaintiff's opposition.  It is alleged that Scarbrough himself communicated with

Winter to negotiate a single-seat license to access the Schork Report.  This allegation is supported by the emails between Scarbrough and Winter attached to Winter's declaration.  And it is further supported by the fact that the license given to Scarbrough was an individual license that he was not allowed to provide others access to.   TSGI's claims are sufficiently related to the communications Scarbrough engaged in to obtain the license, as well as his communications with Stephen Schork.  These constitute sufficient minimum contacts with the forum for purposes of personal jurisdiction.

2.      **TSGI's claims are related to Scarbrough's contacts with Pennsylvania**

TSGI's claims must also "arise out of or relate" to Scarbrough's contacts with the forum. See <u>Helicopteros</u>, 466 U.S. at 414.  The Third Circuit has declined to use a mechanical test for this prong, but has stressed that "[the relatedness requirement] must keep the jurisdictional exposure that results from a contact closely tailored to the contact's substantive obligations," with the goal of keeping a Defendant's liability in a jurisdiction that is "reasonably foreseeable." <u>O'Connor</u>, 496 F.3d at 323.  Here, TSGI's claims certainly "arise out of or relate to" Scarbrough's contacts with TSGI in Pennsylvania, as he was the primary liaison between Choice and TSGI in negotiating the contract at the center of TSGI's claims.  Thus, Scarbrough's liability in Pennsylvania was reasonably foreseeable and the exercise of jurisdiction over him based on those contacts is proper.

3.      **Personal jurisdiction over Scarbrough comports with due process**

The last step of the personal jurisdiction inquiry requires that the exercise of jurisdiction comport with notions of "fair play and substantial justice." <u>Int'l Shoe</u>, 326 U.S. at 320.  It is Defendants' burden to show that it would not. <u>Burger King</u>, 471 U.S. at 477 ("[The Defendant] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.").  The factors courts consider include: the burden on the defendant, the

forum state's interest in litigating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in obtaining the most efficient resolution of the controversy.  Id. at 477 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).   Defendants generally point to the distance between Scarbrough's home state of Texas and Pennsylvania in their minimum contacts analysis, but they have not articulated legitimate reasons why it would be overly burdensome for Scarbrough to litigate the case here. Furthermore, I find that Pennsylvania has a strong interest in litigating a dispute in which a resident business is alleging tortious action against an out-of-state defendant.  See Burger King 471 U.S. at 473 ("[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." (quoting McGee v. International Life Ins. Co., 355 U.S. 220, 222 (1957))).  Lastly, TSGI has an interest in litigating in its chosen forum, rather than being forced to litigate two separate cases or litigate the entire case in Texas as Defendants have requested.  For the foregoing reasons, Defendants have not met their burden to establish that exercising personal jurisdiction over Scarbrough would violate due process.

**4.      Scarbrough can be subject to personal jurisdiction in this Court for his actions taken in his corporate capacity**

Upon finding that Scarbrough has sufficient minimum contacts with Pennsylvania, I must next determine whether he can be subject to the personal jurisdiction of this court for actions he took in his corporate capacity.  Generally, "individuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts." Bowers v. NETI Technologies, Inc., 690 F. Supp. 349, 357 (E.D. Pa. 1988) (citing Cent. Pennsylvania Teamsters Pension Fund v. Burten, 634 F. Supp. 128, 133 (E.D. Pa. 1986)).  Courts have made exceptions to this rule where "a corporate agent may be held personally liable for torts committed in their personal capacity."  Nat'l Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc.,

11

785 F. Supp. 1186, 1911 (W.D. Pa. 1992) (citing <u>Donsco, Inc. v. Casper Corp.</u>, 587 F.2d 602 (3d

Cir. 1978).  To determine whether a corporate officer meets this exception, courts analyze: (1) the

officer's role in the corporate structure; (2) the quality of the officer's contacts; and (3) the extent

and nature of the officer's participation in the alleged tortious conduct.  <u>Mendelsohn, Drucker, &</u>

<u>Assocs. v. Titan Atlas Mfg., Inc.</u>, 885 F. Supp. 2d 767, 784 (E.D. Pa. 2012) (citing <u>Maleski by</u>

<u>Taylor v. DP Realty Tr.</u>, 653 A.2d 54 (Pa. Commw. Ct. 1994)).

     Here, Scarbrough has held titles at Choice such as "Vice President of Risk Management"

and "Executive Vice President" throughout his course of dealings with TSGI, while also being

Choice's main point of contact with TSGI.  (Winter Decl., ¶ 27-28.)   Defendants maintain that

Scarbrough's titles were not representative of his actual responsibilities, and that he was merely a

salesperson who was conferred these titles out of recognition for his tenure at the company.  To

support this assertion, Defendants submitted a declaration from Kiki Dikmen, Managing Partner

at Choice.  (ECF No. 25).  They additionally attached to their motion to dismiss a declaration from

Scarbrough in which he states that he has never held a "supervisory role" at Choice.  (Scarbrough

Decl., Def.'s Mot., Ex. A., ¶ 5.)

     I must construe all factual disputes in TSGI's favor, and the Complaint and accompanying

declarations from TSGI reflect that Scarbrough had the ability to negotiate and execute contracts

on behalf of Choice, which is something that several courts within this district have found

indicative of high stature within the corporate structure.  <u>See, e.g.</u>, <u>Streamline Business Services,</u>

<u>LLC v. Vidible, Inc.</u>, No. 14-cv-1433, 2014 WL 4209550 (E.D. Pa. Aug. 26, 2014); <u>Rittenhouse</u>

<u>& Lee v. Dollars & Sense, Inc.</u>, No. 83-cv-5996, 1987 WL 9665 (E.D. Pa. Apr. 15, 1987); <u>Elbeco</u>

<u>Inc. v. Estrella de Plato, Corp.</u>, 989 F. Supp. 669, 677 (E.D. Pa. 1997).  Accordingly, because

Scarbrough had "the apparent authority to commit [Choice] to contracts and to represent [Choice]

in contractual discussions and obligations," I find that he is subject to this Court's personal jurisdiction in his individual capacity for his alleged conduct as outlined in the Complaint.  See Mendelsohn, 885 F. Supp. 2d at 784-85 (finding CEO of defendant corporation subject to personal jurisdiction in his individual capacity where he was the employee responsible for the contractual relationship between plaintiff and the defendant corporation).[2]

### B.    Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Conclusory allegations do not suffice.  Id.  Twombly and Iqbal's plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully."  Id. Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim."  Phillips v. Cty. Of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) identify the allegations that

---

[2]      When personal jurisdiction is disputed in intentional tort cases, courts within this district first apply the traditional test and, if they do not find jurisdiction, they next consider whether jurisdiction is proper under the Calder effects test.  Devon, 2019 WL 7042426 at *8.  Under Calder v. Jones, jurisdiction is proper where: (1) the defendant committed an intentional act, (2) the act caused actual harm that the defendant knew was likely to be suffered in the forum state, and (3) the act was expressly aimed at the forum state. 465 U.S. 783, 791 (1984).  Though not necessary for purposes of this motion, I also find that jurisdiction is proper under the Calder effects test because: (a) copyright infringement has been recognized as an intentional tort by other courts in this district, (b) TSGI is located in Pennsylvania and thus felt the brunt of the harm in the forum, and (c) Scarbrough's actions were expressly aimed at TSGI, which is located in Pennsylvania.   See Joe Hand Promotions, Inc. v. Shehadeh, No. 18-cv-4119, 2019 WL 2077728, at *3 (E.D. Pa. May 10, 2019) (single email sent by defendant bar owner to plaintiff broadcasting company seeking a quote to stream UFC fight was sufficient to establish minimum contacts in plaintiff's home state for purposes of copyright infringement claim).

are not entitled to the assumption of truth because they are no more than conclusions; and (3) "where there are well-pleaded factual allegations, . . . assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220. When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

### 1.    Copyright Infringement Claim

To plead a valid claim for copyright infringement, a Plaintiff must establish "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." Carlin v. Bezos, 649 Fed. Appx. 181, 182 (3d Cir. 2016) (quoting Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002). Section 102 of The Copyright Act of 1976 protects "original works of authorship fixed in any tangible medium of expression[.]" 17 U.S.C. § 102(a). One such protectable medium of expression is a "compilation," which the Act defines as "work formed by the collection and assembling of preexisting data or materials that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." § 101.

The United States Supreme Court in Feist Publications Inc., v. Rural Telephone Service Co., Inc. clarified the requirements behind the copyrightability of compilations, finding that originality is the key requirement and that "the principal focus should be on whether the selection, coordination, and arrangement [of the data] are sufficiently original to merit protection." 499 U.S. 340, 357–58 (1991). "Not every selection, coordination, or arrangement [is original] . . . [and]

there will be some fact-based works in which the selection, coordination, and arrangement are not sufficiently original to trigger copyright protection." Id. at 358.  However, "the originality requirement is not particularly stringent…[and] requires only that the author make the selection independently…and display some minimal level of creativity."  Id.  While the originality requirement for compilations is not particularly stringent, information is not protectable when it consists of "features that are so common or necessary to [the] idea's expression that copyrighting them effectively copyrights the idea itself."  Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc., 931 F.3d 215, 223 (3d Cir. 2019).  This is known as the "*scenes a faire*" doctrine. Id.

The work that was allegedly copyrighted in this case can be characterized as compilations of facts about the energy market in the form of graphs and accompanying text.  Because facts are not protectable under copyright laws, the question becomes whether TSGI's "selection, coordination, or arrangement" of those uncopyrightable facts is sufficiently original enough to warrant protection.

Defendants first argue that the information they published on their website was purely factual.  For example, one of the phrases cited in the Complaint that was allegedly copied from the Schork Report and distributed on Defendants' website reads: "[a]s of last Tuesday, Wall Street longs fell 2.8% to a 9-week low of 546,279 NYMEX and ICE futures, options and swaps (82nd percentile) (ECF No. 1, Ex. B., p. 2).  Defendants maintain that this information is purely factual and therefore not protectable material under copyright law.  With respect to the graphs, Defendants contend that they are simply the plotting of data released by the Government, which is also not copyrightable.  And even if any of this information is found to be copyrightable, Defendants argue that any copying was *de minimus* and consisted of only short phrases.  Lastly, Defendants advocate for the application of the *scenes a faire* doctrine because "it would be impossible to report on the

energy market without [including the facts allegedly copied from the Schork Report]."  (Def.'s Br., p. 15).

TSGI responds that they have sufficiently pled ownership of the copyrighted material and the Defendants' unauthorized copying of that material.  While conceding that facts cannot be copyrighted, TSGI asserts that Defendants copied more than just facts, they copied "the way TSGI took facts and arranged them" in the Schork Report.  (Pltf.'s Resp., p. 11).  TSGI highlights that the bar for originality in compilations is a low one, and they simply must show that the choices made about which facts to include in the report and how to arrange them involved "a minimal degree of creativity."  William A. Graham Co. v. Haughey, 430 F. Supp. 2d 458, 465 (E.D. Pa. 2006) (citing Feist, 499 U.S. at 348).  Here, TSGI maintains this bar is easily met, as the charts, graphs, and analyses copied reflect TSGI's "unique expression" of the underlying data based on author Stephen Schork's multiple years of experience in the energy industry.

I agree with TSGI that they have sufficiently pled a copyright infringement claim based on Defendants' use of portions of the Schork Report.  First, the material that was copied is not exclusively factual.  The bar for originality in selection and arrangement of facts is low, and the United States Supreme Court has found that "the vast majority of compilations will pass this test." Feist, 499 U.S. at 359.  The situation before me can be distinguished from the situations Defendants cited in their brief.  For example, in Feist, the Court held that the names, towns, and telephone numbers defendants pulled from the white pages to be used in a different telephone directory were not original enough to be copyrightable.  The Court emphasized that the plaintiff's selection of listings "could not be more obvious" as they simply published "the most basic information – name, town, and telephone number" and listed them in alphabetical order, and "there is nothing remotely creative about arranging names alphabetically in a white pages directory."  Id. at 363.

16

In contrast, here, Defendants copied data from the Schork Report that was compiled to reflect the unique choices TSGI made about which facts should be presented, and how. Those choices contextualized the raw data so it could be more effectively used by readers, and that level of originality is protected from copyright infringement. For example, Defendants reference a graph from the Schork Report cited in the Complaint that was allegedly copied and characterize it as "nothing more than plotted data showing the amount of natural gas storage on a given date." (Def.'s Br., p. 16). However, the graph included multiple data points, including "a [five]-year average of end-of-refills line, a five-year average of end-of-winter line, a record line, and an 'SA' trend line based on TSGI's unique seasonally adjusted time series." (Pltf.'s Resp., p. 12) (emphasis omitted). This specific presentation of facts can be easily distinguished from the names, phone numbers, and addresses listed alphabetically in <u>Feist</u>, as it is more than just basic information and there is nothing obvious about the way it was organized.

Unlike the cases cited by Defendants, opportunity for variation exists in arranging and presenting the energy data from the Schork Report into graphs and accompanying textual analysis. For example, TSGI could have chosen to include a data point for ten-year averages in the graph detailed above, and so on. See <u>Victor Lalli Enterprises, Inc. v. Big Red Apple, Inc.</u>, 936 F.2d 671 (2d Cir. 1991) (information in charts of horse race results did not "vary in the slightest" between publishers because the "purely functional grids [offered] no opportunity for variation). Furthermore, as displayed in the Complaint in a side-by-side comparison of the Schork Report and Defendants' publication on their website, Defendants copied entire paragraphs that accompanied the graphs, not just short phrases. (Compl. ¶ 46.)

Accordingly, I find that TSGI has pled a valid copyright infringement claim, and Defendants' motion to dismiss that claim is denied.[3]

## 2.    Circumvention of Copyright Protection Systems Claim

Defendants move to dismiss TSGI's circumvention of copyright protection systems claim under 17 U.S.C. § 1201 of the Digital Millennium Copyright Act ("DRM claim").  Section 1201 of the Digital Millennium Copyright Act provides that "[n]o person shall circumvent a technical measure that effectively controls access to a work."  § 1201.  The act defines "circumvention" as "to descramble a scrambled work, to decrypt and encrypted work, or to otherwise avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."  Id.  A technological measure "effectively controls access" to a work if "the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the owner, to gain access to that work."  Id.

Defendants argue that this claim fails for three reasons: (1) the DRM claim cannot survive without a viable copyright infringement claim, which Defendants argue TSGI has not sufficiently pled, (2) all but one alleged DRM violation falls outside of the three-year statute of limitations for DRM claims; and (3) § 1201 only prohibits the use of technology to gain unlawful access to copyrighted material, not unlawful use once the material is lawfully accessed, and TSGI admits

---

[3]      Defendants also argue that all but one of TSGI's infringement claims are barred by the three-year statute of limitations for copyright infringement claims because almost all copying occurred before December 28, 2017.  TSGI responds that in continuing infringement cases, the Third Circuit follows the discovery rule, in which "a cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for [the] claim." William A. Graham Co. v. Haughey, 568 F.3d 425, 438 (3d Cir. 2009) (internal quotations omitted).  TSGI alleged in its Complaint that it did not become aware of the alleged infringing until September of 2020.  (Compl. ¶ 40.)  Defendants argue, however, that the 2014 email exchange between TSGI and Defendants in which Scarbrough admitted to sharing the report several times put TSGI on notice that infringement was occurring as early as 2014.  Factual disputes regarding whether a limitations period was tolled is not appropriate to be resolved at the motion to dismiss phase.  Raucci v. Candy & Toy Factory, 145 F. Supp. 3d 440, 448–49 (E.D. Pa. 2015).  For these reasons, I cannot say at this stage whether TSGI's claims are time barred, and that issue is more appropriate to be resolved in a motion for summary judgment.

that Defendants had lawful access to the Schork Report through a password provided by TSGI. Defendants highlight that courts have rejected DRM claims when the defendant had lawful access to the copyrighted material.  <u>Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC</u>, 2017 WL 696126, at *18 (S.D.N.Y. Feb. 15, 2017), <u>report & recommendation adopted</u>, 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) (collecting cases in which DRM claims were dismissed where defendants used approved methodologies, such as a username and password, to access copyrighted materials).

TSGI responds that they implemented technical restrictions, via password protecting the Schork Report and only providing that password to paying subscribers, and Defendants circumvented those technical measures and copied their materials.  TSGI cites a case in which the court explained that when technical restrictions are circumvented, plaintiffs may pursue a claim for simple copyright infringement as well as a claim under the DMCA.  <u>Murphy v. Millennium Radio Grp. LLC</u>, 650 F.3d 295, 300 (3d Cir. 2011) ("For example, if a movie studio encrypts a DVD so that it cannot be copied without special software or hardware, and an individual uses his own software to 'crack' the encryption and make copies without permission, the studio may pursue the copier both for simple infringement under the Copyright Act and, separately, for his circumvention of the encryption, which is a 'technological measure' designed to 'control ... access to' the DVD, under the DMCA.") (quoting § 1201).

Although TSGI baldly asserts that Defendants "repeatedly circumvented TSGI's digital rights management system," the Complaint fails to plead any facts to support that contention.  <u>See FMHUB, LLC v. MuniPlatform, LCC</u>, No. 19-cv-15595, 2021 WL 1422873 (D.N.J. April 15, 2021) (dismissing a DRM claim because Plaintiff failed to detail the measures used to circumvent access).  Moreover, TSGI admitted that it provided Defendant Scarbrough with a legitimate

password to access the report.   (Compl. ¶ 37.)   Any potential misuse of the password by
unauthorized users, while potentially relevant to TSGI's copyright infringement claims, cannot
support a DRM claim because misuse of a legitimate password does not fall within the ambit of §
1201.  Accordingly, Defendants' motion to dismiss TSGI's DRM claim is granted.

### 3.      Removal of Copyright Management Information Claim

Defendants next argue that TSGI's copyright management information claim ("CMI
claim") should be dismissed because TSGI has failed to plead that Defendants intentionally
removed or altered CMI knowing that the removal was being done to aid an infringement. Sections
1202(b) and 1202(b)(1) of the DMCA together dictate that "[n]o person shall, without the authority
of the copyright owner or the law…intentionally remove or alter any copyright management
information."   Section 1202(c) defines "copyright management information" as, among other
things, "[t]he name of, and other identifying information about, the author of the work," and "[t]he
name of, and other identifying information about, the copyright owner of a work, including the
information set forth in a notice of copyright."  § 1202(c).  TSGI alleges that there was CMI in the
footer of each page of the Schork Report, and that Defendants removed the CMI when copying
the material and republishing it on their own website.  Defendants respond that they did not have
the requisite intent necessary for a CMI claim, and moreover, TSGI has failed to plead that
Defendants removed the CMI from "the body of, or area around," the copied material.

Defendants' argument is unpersuasive, and I find that at this stage of the litigation, TSGI
has pled sufficient facts to support their CMI claim.  Defendants primarily rely on Schiffer Pub.,
Ltd. v. Chron. Books, LLC, to press that the CMI was not in close enough proximity to the copied
material.  No. 03-cv-4962, 2004 WL 2583817, at *14 (E.D. Pa. Nov. 12, 2004).  Putting aside that
the procedural posture here differs from Schiffer as that opinion was issued following a bench trial,

that case is also factually distinct from the case before me.  In <u>Schiffer</u>, the court noted that the only CMI included in the plaintiff's works were notices of copyright that appeared on the inside covers of their books.  <u>Id.</u>  Thus, the court found that the defendants did not remove CMI when they copied photographs from the books because the photographs "did not contain any copyright management information whatsoever, either on or near the images themselves."

Here, TSGI included a copyright notice in the footer of each page of the Schork Report. (Compl. ¶ 27.)   The footer of a page can certainly be considered in the "area around" the copyrighted material.   TSGI also pled that Defendants knew "distributing the TSGI Works knowing that copyright information had been removed would induce, enable, facilitate, or conceal an infringement of TSGI's rights."  (Compl. ¶ 95.)  Defendants' reliance on <u>Schiffer</u> regarding the knowledge requirement is misplaced because that case did not examine the pleading requirements at the motion to dismiss stage.   TSGI has pled that Defendants knew removing the CMI would facilitate the infringement of TSGI's rights, and this is sufficient.   There are also factual allegations supporting an inference that the CMI removal was done intentionally, namely: the copyright notice on each page of the Schork Report, the copyright notice at the bottom of each cover email containing the Schork Report, and the Terms and Conditions which expressly prohibited copying of the report.   For the foregoing reasons, I find that TSGI has sufficiently pled a valid CMI claim, and Defendants' motion to dismiss that claim is denied.

### 4.    Breach of Contract Claim

Defendants move to dismiss TSGI's breach of contract claim, arguing that no valid contract exists between the parties.   TSGI alleges in its Complaint that the parties entered into a "Subscription Agreement" in which Defendants agreed to be bound by TSGI's Terms and Conditions prohibiting sharing of the report.   However, Defendants note that no formal written

agreement exists.  TSGI admits that no written agreement exists but argues that all elements of contract formation are otherwise met, as Defendant Scarbrough requested a single seat license via email to access the report, and TSGI provided that license.  TSGI additionally maintains that Defendants agreed to be bound by the Terms and Conditions prohibiting sharing of the report because the Terms and Conditions were attached to each invoice sent to Defendants over the course of performance.  Defendants respond that terms attached to an invoice after services are rendered are not binding.

In Pennsylvania, a plaintiff may establish a breach of contract claim by pleading: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Udodi v. Stern, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020). A valid contract exists when: (1) both parties manifested an intention to be bound by the agreement; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) there was consideration. ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 666 (3d Cir. 1998). A separate document may be incorporated by reference into the main agreement where: (1) the underlying contract makes clear reference to [the] separate document, (2) the identity of the separate document may be ascertained, and (3) incorporation of the document will not result in surprise or hardship." Materials Handling Enterprises, Inc. v. Atlantis Techs., LLC, 563 F. Supp. 3d 387, 392 (W.D. Pa. 2021) (quoting Standard Bent Glass Corp., 333 F.3d at 447 (3d Cir. 2003)).

For purposes of this motion, TSGI has sufficiently pled that a valid contract exists.  The parties negotiated the terms of the agreement, with Defendant Scarbrough requesting a single user license and TSGI agreeing to provide the license and password protected access to the Schork Report.  The existence of a formal written agreement is not necessary.  Defendants' actions in

seeking the subscription and paying monthly invoices for several years indicates their intent to be bound by the agreement.  Moreover, I find that the Terms and Conditions are properly incorporated into the agreement at this stage of the litigation.  Defendants' reliance on Oak St. Printery, LLC v. Fujifilm N. Am. Corp. is misplaced because that case involved the enforceability of a forum selection clause contained in the Terms and Conditions of a sale, and the inquiry was focused on whether the plaintiffs should be bound by their contractual choice of forum.  895 F. Supp. 2d 613 (M.D. Pa. 2012).  Here, the issue is whether the Terms and Conditions of the subscription can be fairly incorporated into the agreement between the parties for purposes of a motion to dismiss. The Complaint indicates that the Terms and Conditions were referenced several times in communications between the parties, i.e. both the daily cover emails containing the report, as well as the invoices sent to Defendants.  Those references to the Terms and Conditions are sufficiently clear under Standard Bent Glass Corp. to put Defendants on notice to review them, and incorporation of the Terms and Conditions will not result in surprise or hardship.  Therefore, Defendants' motion to dismiss TSGI's breach of contract claim is denied.[4]

### 5.    Unjust Enrichment Claim

Lastly, Defendants move to dismiss TSGI's unjust enrichment claim, asserting that it is preempted by the Copyright Act.  "Federal courts have routinely held that claims of unjust enrichment are pre-empted under § 106 where the claim rests on an allegation that the defendant has secured a benefit due to the plaintiff under the Copyright Act." Collegesource, Inc. v. Academymone, Inc., 597 Fed. Appx. 116, 128 (3d Cir. 2015).  An exception to this rule exists,

---

[4]    Defendants additionally argue that the breach of contract claim is barred by the statute of limitations.  For the reasons I outlined in footnote two regarding essentially the same issue, I find this argument to be without merit.  TSGI pled that it became aware of the breach in 2020, and I must accept all well pled allegations as true.  Furthermore, any alleged "admissions" made in pre-motion conference letters are irrelevant for purposes of this motion.

however, when the state cause of action "requires proof of an extra element beyond mere copying, preparation of derivative works, performance, distribution or display."  <u>Live Face on Web, LLC v. Howard Stern Production, Inc.</u>, No. 08-cv-2579, 2009 WL 723481, at *4 (E.D. Pa. Mar. 17, 2009) (internal quotations omitted).  TSGI argues that here, Defendants' conduct derives from "exceeding the scope of their subscription license." (Pltf.'s Br., p. 25).  TSGI goes on to state that by exceeding the scope of that license through distributing TSGI's work both internally and externally, Defendants received a benefit for which TSGI was not compensated.

TSGI's unjust enrichment claim simply "asserts that [Defendants] exploited [TSGI's] intellectual property without paying for it," and therefore, "[it] is nothing more than a copyright infringement claim and is preempted." <u>Raucci</u>, 145 F. Supp. 3d at 453.  TSGI characterizes the underlying conduct as Defendants "exceeding the scope of their subscription license," however, these allegations "mimic the elements of a copyright claim and nothing more." <u>Id.</u>  Accordingly, Defendants' motion to dismiss TSGI's unjust enrichment claim is granted.

## IV.     CONCLUSION

For the foregoing reasons, I will grant in part and deny in part Defendants' Motion to Dismiss.  An appropriate Order follows.